[S. F. No. 7987.   Department One.—September 20, 1918.]

## JOHN COUSINO et al., Appellants, v. WESTERN SHORE LUMBER COMPANY, Respondent.

POWER OF ATTORNEY — EXECUTION BY MORE THAN ONE PARTY — CON-STRUCTION.—Conveyances and powers of attorney joint in form are to be construed as conveying or authorizing the conveyance of whatever interest both or either of the parties have in the property to be affected by the instrument under consideration.

ID.—EXECUTION BY HUSBAND AND WIFE—CONVEYANCE OF WIFE'S SEPA-RATE PROPERTY.—A power of attorney executed by a husband and wife constituting and appointing a third party as their true and lawful attorney to enter into and upon and take possession of any and all pieces of land or the timber and other material therein in the state of Minnesota and in any state or territory of the United States, which they then owned, or which they might thereafter ac-quire or become seised of, or in which they might become interested, and authorizing and empowering such attorney to grant, bargain, sell, demise, lease, convey, and confirm said land, or any part thereof, to such person or persons and for such prices as to said attorney should seem meet and proper, is sufficient to authorize such attorney to convey the wife's separate property, and is not confined in its grant of powers to the joint property of the parties, or to such property as they then owned.

ADVERSE POSSESSION—TIMBER LAND.—Under subdivision 3 of section 323 of the Code of Civil Procedure, adverse possession to rough mountain timber lands is acquired by a lumber company, where it shortly after receiving a conveyance to the lands began the patrolling of the same for the prevention of trespassing and for the protection of the timber against fires, and continued the patrol and paid the taxes on the lands for the required statutory period thereafter.

CLXXIX Cal.—1                (1)

APPEAL from a judgment of the Superior Court of San Mateo County.   Geo. H. Buck, Judge.   Affirmed.

The facts are stated in the opinion of the court.

Francis G. Burke, for Appellants.

McCutchen, Olney & Willard, for Respondent.

RICHARDS, J., *pro tem.*—This action was brought to determine the adverse claim of the defendant to 480 acres of land in San Mateo County under the provisions of section 738 of the Code of Civil Procedure.   The defendant denied title in the plaintiffs to any portion of the property, and in a cross-complaint asserted ownership of the property in itself. The facts of the case are practically without conflict, and are briefly these:

Mary Huot, a Sioux mixed blood Indian woman, was born on the Lake Pepin Reserve in Minnesota in the year 1850. Pursuant to an act of Congress passed July 17, 1854 (10 Stat. 304, c. 83), there was issued to her and in her name Siouz half-breed scrip entitling her to locate for herself lands of the public domain.   The scrip was delivered by the United States government to John Huot, the father of Mary Huot, for her use and benefit, on March 25, 1857.   On January 22, 1864, said John Huot was appointed his daughter's guardian by the county court of Pierce County, Wisconsin, where she then resided, and on the same day, and as such guardian, he executed to one Wm. S. Chapman a power of attorney, by which he authorized said Chapman to locate said scrip upon public lands.   On October 19, 1868, said Chapman, acting under said power of attorney, located the scrip upon the lands involved in this action in the name of Mary Huot, and patents therefor were issued to her on January 20, 1874, which patents were recorded in the county of San Mateo on September 16, 1881.   Mary Huot married John Cousino, also spelled Cosineau, on June 17, 1864, in the state of Wisconsin, where she continued to reside until 1876, when she and her husband removed to the state of Minnesota, where they lived until the year 1888, when they took up their residence at Grant's Pass, Oregon; where she died on May 28, 1894, leaving as her heirs her husband and seven children, who constitute the plaintiffs

in this action, basing their claim of title upon their heirship of Mary Huot.

The defendant bases its claim of ownership of the lands in question upon several grounds, the first of these being that of an alleged conveyance by Mary Huot and her husband to Wm. S. Chapman, dated July 26, 1871, by whom the premises were conveyed to the defendant. The deed from Mary Huot and her husband to Wm. S. Chapman was executed on their behalf by one Henry T. Welles, purporting to act as their attorney in fact under a certain power of attorney executed by them on May 20, 1871, by which Mary Cosineau, formerly Mary Huot, and John Cosineau, her husband, of the county of Pierce, state of Wisconsin, constituted and appointed said Henry T. Welles their true and lawful attorney "for us and in our names, places and stead to enter into and upon and take possession of any and all pieces and parcels of land or the timber and other material therein in the state of Minnesota and in any state or territory of the United States which we now own or which we may hereafter acquire or become seised of or in which we may now or hereafter be in any way interested and we further authorize and empower our said attorney to grant, bargain, sell, demise, lease, convey and confirm said land or any part thereof . . . to such person or persons and for such prices, as to our said attorney shall seem meet and proper," etc.

The first point urged by the appellants herein is that said power of attorney was not sufficient in its grant of powers to have authorized said Henry T. Welles, as the attorney in fact of Mary Cosineau, formerly Mary Huot, to convey her separate property, their particular contention being that said power of attorney being joint in its terms must be construed as having reference only to the joint property of the parties executing the same, or at most to such property as both of the parties "now own" or "may hereafter acquire or become seised of," or "may now or hereafter be in any way interested" in; and that since the property with respect to which the power was attempted to be exercised was situated in California and was the separate property of the wife in which the husband had no present or prospective interest, it was not covered by the terms of the power. Whatever the rule may be in other jurisdictions, we are constrained to hold that from an early date in the judicial history of California it has been

the rule that conveyances and powers of attorney joint in form are to be construed as conveying or authorizing the conveyance of whatever interest both or either of the parties have in the property to be affected by the instrument under consideration. In the early case of *Castro* v. *Tennent*, 44 Cal. 253, the instrument in question was a conveyance wherein the grantors undertook to convey all of the undivided half of the right, title, and interest of the said parties of the first part of, in, and to that certain tract and parcel of land, etc. In construing this clause in said conveyance the court said: "It has been suggested in argument that such a description includes only the joint estate or interest of the grantors, but this construction is hypercritical and is too narrow and technical. In a large majority of cases such a construction would defeat the real intention of the parties. If there be several adverse claimants to separate undivided interests in a tract of land, and if all the claimants unite in a joint deed to a stranger, conveying all their right, title, and interest in and to the lands, it would not be seriously contended, I apprehend, that nothing passed by the deed, because the grantors had no joint interest in the land." In the case of *Douglas* v. *Fulda*, 50 Cal. 77, the instrument in question was a power of attorney given by a husband and wife, joint in form, authorizing one Calderwood to lease a certain lot, and under which he undertook to execute a lease of the lot, which was the separate property of the wife. The court said: "The power of attorney was sufficient. In *Castro* v. *Tennent*, 44 Cal. 253, a similar question arose upon the construction of a deed executed by the husband and wife jointly, and purporting to convey their joint interest in the land. It was contended that the separate estate or interest of the wife did not pass by the conveyance. But this court said that this construction was hypercritical and too narrow and technical, and held that the separate estate of the wife passed by the deed. The question now presented is substantially the same. It was undoubtedly the intention of the parties to confer upon Calderwood the power to deal with the separate property of Elizabeth Douglas, and that power was conferred by the instrument, as we construe it." The rule of construction declared in these two cases has never been departed from or criticised in any later cases, and has, therefore, we think,

become a rule of property in this state which should not now be changed.

In addition to this, however, the supreme court of the United States has declared the same rule for the construction of powers of attorney joint in form. In the case of *Holladay* v. *Daily*, 19 Wall. 606, [22 L. Ed. 187], involving the validity of a transfer of the separate property of the husband under a joint power of attorney executed by the husband and wife, Mr. Justice Field, in sustaining such conveyance, said: ''A power of attorney created by two or more persons possessing distinct interests in real property may, of course, be so limited as to prevent a sale of the interest of either separately; but in the absence of qualifying terms, or other circumstances, thus restraining the authority of the attorney, a power to sell and convey real property, given by several parties, in general terms, as in the present case, is a power to sell and convey the interest of each, either jointly with the interests of the others, or by a separate instrument.''

The chief reliance of the appellants herein is upon the case of *Gilbert* v. *How*, 45 Minn. 121, [22 Am. St. Rep. 724, 47 N. W. 643], in which a power of attorney substantially in the form of the power under review in this case was held to be insufficient to authorize the donee of the power to convey lands in which only one of the donors of the power was interested. That this case is in conflict with the rule laid down in the foregoing California cases and also with the statement of the rule by the supreme court of the United States in the case above cited was pointed out by Mr. A. C. Freeman in his notes to the case of *Gilbert* v. *How,* as reported in 22 Am. St. Rep. 724. It is also to be noted that the rule announced in the case of *Gilbert* v. *How* has been very much modified by the courts of Minnesota in three later cases, viz.: *Tuman* v. *Pillsbury*, 60 Minn. 520, [63 N. W. 104]; *Snell* v. *Weyerhauser*, 71 Minn. 57, [73 N. W. 633], and *Roy* v. *Harrison Iron Min. Co.*, 113 Minn. 143, [129 N. W. 154], in each of which later cases powers of attorney in almost the precise phraseology of that under review herein were held to be sufficient to support conveyances of the separate property of the husband, in which at most the only interest of the wife was an inchoate right of dower. In each of these last-named cases the supreme court of Minnesota lays special emphasis upon the clause in the power authorizing the donee thereof to con-

vey any lands wherever situated in which the donors of the power "may now or hereafter be in any way interested," holding that these words must be given a broadening effect so as to take these cases out of the rule laid down in *Gilbert* v. *How.* The same precise phrase occurs in the power in question here. We are, therefore, of the opinion that for all of the foregoing reasons the power of attorney given by Mary Cosineau, formerly Mary Huot, and her husband, John Cosineau, was sufficient to have authorized the execution of the conveyance of the lands in question to Wm. S. Chapman, and hence to sustain the defendant's title derived through such conveyance.

The respondent further supports its claim of title to the premises by the plea and proof of adverse possession, and we think its claim in that behalf should also be sustained. The lands in question are rough mountain timber lands valuable chiefly, if not solely, for the timber thereon, which consists of a heavy growth of redwood, fir, and oak. From a period not long after the defendant received the conveyance of these lands from Chapman it began patrolling the same for the prevention of trespassing and for the protection of the timber against fires. In connection with both of these purposes trails were laid out and constantly maintained through various portions of the property from a time shortly after the conveyance to it of the property down to the date of the inception of this action, and which were made use of constantly by the agents of the defendant to keep hunters, fishers, campers, and other trespassers off the property, and to protect all portions thereof against fires. A cabin for the use of the patrols was built and maintained upon the premises, and from time to time as fires occurred within or threatened to invade the property bodies of fire-fighters were used in preserving its timber from destruction. It is conceded that the defendant paid the taxes assessed against the property during all these years. The lands, as we have seen, were timber lands. The defendant, who was thus the occupant of said lands, was a lumber company, and the ordinary and eventual use to which said lands were to be put was that of the cutting, logging, and milling of the timber thereon; and this being so, we think the possession of the defendant, as indicated by its foregoing assertion of control over said property, based as it was upon a claim of title founded upon

a written instrument, was sufficient to constitute adverse possession for the required statutory period under subdivision 3 of section 323 of the Code of Civil Procedure. (*Coryell* v. *Cain*, 16 Cal. 567; *Wolf* v. *Baldwin*, 19 Cal. 306; *Brumagim* v. *Bradshaw*, 39 Cal. 24; *Spotts* v. *Hanley*, 85 Cal. 155, [24 Pac. 738]; *Webber* v. *Clarke*, 74 Cal. 11, [15 Pac. 431].)

The other points made upon the appeal do not require discussion.

Judgment affirmed.

Shaw, J., and Sloss, J., concurred.

Hearing in Bank denied.